LIVE POULTRY TRANSP. CO. v. AMERICAN POULTRY CO.

(Circuit Court, D. Massachusetts. April 27, 1910.)

No. 499.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—POULTRY CAR.

The Mudd patent, No. 539,229, for a poultry car, which relates to the construction, support, and location of the troughs for feed and water, covers an improvement on prior cars of demonstrated practical value, in keeping the food and water clean and reducing the mortality among the fowls in transportation, and discloses patentable novelty and invention; also *held* infringed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Live Poultry Transportation Company against the American Poultry Company. Decree for complainant.

Amos R. Little and Dyrenforth, Lee, Chritton & Wiles, for complainant.

Charles F. Perkins and Everett N. Curtis, for defendant.

BROWN, District Judge. The bill charges infringement of two letters patent to Francis X. Mudd, each for a "poultry car"; the first dated January 10, 1893, No. 489,657, and the second dated May 14, 1895, No. 539,229. The charge of infringement of the earlier patent has been abandoned, and the latter patent, No. 539,229, alone is in suit. The claims in issue are:

"1. In a poultry car containing coops at opposite sides of an aisle, the upright posts, at the aisle, of the framework of the coops, said posts having openings, at which to insert and withdraw the troughs, and troughs supported in the coops to extend lengthwise of and underneath the transverse beams of their framework, substantially as described.

"(2) In a poultry car containing coops at opposite sides of an aisle, the upright posts, at the aisle, of the framework of the coops, said posts having openings, at which to insert and withdraw the troughs, shells supported in the coops to extend lengthwise and underneath the transverse beams of their framework, and troughs removably confined in the shells, substantially as described."

The specification of the patent in suit states:

"My invention relates to an improvement in the class of cars for shipping live poultry, to which belongs the improvement in poultry cars for which letters patent of the United States No. 489,657 were granted to me January 10, 1893.

"My present invention relates, more particularly, to an improvement in the troughs provided in the coops to contain the feed and water for the poultry. According to my aforesaid patent the troughs are supported near their opposite ends on hook-shaped bearings provided for them and rigidly suspended from the sides of the coops. This arrangement is undesirable for two reasons. In the first place, the trough in a coop, by projecting into it, affords a space so narrow, vertically, underneath it, that a fowl cannot stand under it, and if it gets into that position, particularly if it be weak, it is liable to be crowded or 'packed' by the other fowls in the coop and killed; secondly, by the old structure referred to, wherein the troughs are adapted to be inserted into the coops and withdrawn therefrom, at the aisle, through openings at or near the corners of the adjacent doors, many of the troughs are stolen or lost, owing to the ease with which they may be removed, notwithstanding the greater length of a trough than the width of the aisle, since by drawing a trough lengthwise from its hanger supports into the aisle far enough to withdraw it from its outer hanger support, it may then readily be turned to such an angle as to enable its entire length to be pulled out into the aisle.

"My object is to provide a construction of the trough feature in a poultry car whereby both the objectionable incidents of the former construction referred to shall be overcome."

In respect to the second feature pointed out by the patentee—i. e., means for preventing the troughs from being stolen or lost—the defendant is not charged with infringement, and the defendant's structure does not in this respect infringe. The defendant contends that in this feature, wherein it does not infringe, resides the sole patentable novelty, if any, of complainant's structure.

The defense of noninfringement is based upon the contention that the defendant has dispensed entirely with the arrangement of devices

for preventing the theft or loss of the troughs, and that patentable novelty, if any, resides solely in this feature of construction. The defendant fails, however, to give proper weight to the fact that the patentee has claimed for his novel structure very important advantages in the transportation of live poultry—the prevention of crowding and of injury from the projecting trough.

In the structure of Mudd's earlier patent each coop contained a trough for feed and water; the trough being incased in a permanent shell or shield. The trough was removable and replaceable from a central aisle of the car through an opening in the door of the coop; the shell or shield for the trough being fixed, and the feed trough being "slidable" within the shield through an opening in the door of the coop.

The improvement which is the subject-matter of the patent in suit consisted in placing the troughs and their inclosing shields in a position directly below the transverse beams of the car, and providing openings, not as in the earlier patent in the door of the coop, but in the aisle posts, to permit the insertion and removal of the troughs. As a result of this improvement, each trough with its shield became common to two coops, projecting partly into each; the transverse beams, being central over the tops of the troughs and their shields, assisting in forming with the shields barriers between the coops, and incidentally preventing the fowls from getting into the troughs or roosting on or over them. Reducing the projection of the troughs and shields into the interior of the coop made it impossible for the fowls to get under them in such a way that they could not readily extricate themselves. The patentee testifies as follows:

"The advantages of the car of patent No. 539,229—that is, our present car— over the car of patent No. 489,657 are very great, and are as follows: First, the troughs are located exactly between two coops, so that the poultry can have access to them freely from both sides, which was not the case in the earlier car; second, the troughs are,in such position that the poultry cannot roost upon them and foul the feed and water in the troughs, as in the case of the earlier car; third, the troughs are in such position that the dirt falling through the crack, necessary in all removable coops, does not fall in the trough, as was the case in the earlier car; fourth, the troughs being exactly between two coops and a dividing slat immediately under same, leaves no room for the smaller and weaker poultry to be crowded under the trough, trampled, and killed, as was the case with the other car; fifth, the troughs are supported by hangers that are equally rigid on both sides, and therefore do not sag on one side to such an extent that the poultry has difficulty in getting at the feed from one of the coops, and said feed and water put in the trough does not spill out therefrom by reason of said sagging; sixth, the troughs are much more accessible, easier to pull out for the purpose of receiving the feed and for cleaning, and easier shoved back into place, and will stay in place better when the car is running, and they do not interfere with the opening and closing of the coop door in any way, all of which difficulties existed and were very objectionable in the earlier car."

The evidence of the great advantages of these modifications is very strong, and is practically uncontradicted. Live poultry shippers of experience have estimated the saving of the shrinkage in a car of poultry as from $75 to $150 on a long trip, such as a trip to San Francisco or New York from the Middle West. They testify that it is easier to remove the troughs and supply them with feed and water

than with the old style, that there is a saving in feed and water, because feed and water are kept clean, and one shipper testifies that in his own experience he had been able to save a shrinkage of at least 500 pounds from Chicago to New York, and 600 to 700 pounds from Iowa to New York, by using a car of the present form, instead of a car of the type of the previous patent.

It was testified that the mortality among the chickens was due to the unsanitary condition of the food, and to the fact that the poultry would get crowded under and back of the troughs in the earlier form of the cars, and that the saving in mortality was due to obviating these two defects.

In view of this testimony, this patent is entitled to consideration as a patent for an improvement of demonstrated practical value. There is no warrant for treating this patent as merely for an invention for saving the cost of lost or stolen troughs, when the evidence is so strong that it is a valuable aid in preventing mortality among the live poultry, for whose safe transportation these cars are designed. The argument that these changes are obvious mechanical changes is offset by the fact that there is a considerable prior art, as evidenced by a number of former patents, and that the complainant's improvement is not found in any of them. The patentee is experienced in this art, as appears by the prior patent No. 444,266, 1891, to Jenkins & Mudd, and No. 489,657, to F. X. Mudd. That the present improvement was not obvious may be inferred from the fact that it did not occur to this inventor until after considerable practical experience with the art.

The defendant attempts to narrow the construction of the patent by reference to a copy of the file wrapper; but I am of the opinion that none of the proceedings in the Patent Office are such as to estop the patentee from claiming in this court patentable novelty in respect to features clearly set forth in his specification, and especially that there is nothing to restrict the claims in suit to narrow claims for means for preventing the theft or loss of troughs.

The defendant further contends that it appears from the evidence that sufficient notice was not given of the alleged infringement before the filing of the bill, either by marking the cars, or by notifying the defendant in writing. This matter, however, seems to relate simply to the question of damages, and may be further considered in settling the terms of the decree as to an accounting.

As I am of the opinion that the prima facie validity of the patent is supported by the sensible views of the examiners in chief, and by the satisfactory evidence that the patentee had advanced the art of poultry transportation, the question of patentable novelty and of infringement may be determined in complainant's favor, without a consideration of certain mechanical features which seem to give simplicity and stability of construction to the complainant's poultry car. The use of openings in the aisle posts in lieu of openings in the doors of the coops cannot be regarded as a mere mechanical change, since such a change involved also the idea of a relocation of the feed troughs and shields, and their change to a position where they served their proper function of supplying the poultry with pure food and water

without performing the injurious and improper function of crowding and poisoning the poultry.

As the defendant's structure is substantially similar to complainant's in all respects other than in means for preventing a loss or theft of troughs, infringement is clearly established.

A draft decree for complainant, enjoining infringement of claims 1 and 2 of patent No. 539,229, may be presented accordingly.